UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAMONT SHOLAR,

        Petitioner,

v.                                                                           Case No. 23-cv-0066-bhl

DAISY CHASE,[1]

        Respondent.

## ORDER DENYING §2254 HABEAS PETITION

        In October 2013, a Milwaukee County jury convicted Petitioner Lamont Sholar of armed robbery and burglary. Sholar unsuccessfully challenged his convictions in the state courts and then filed a petition for writ of habeas corpus in this Court. After screening and the resolution of Respondent's motion to dismiss, Sholar is pursuing three grounds, based on claims that: (1) his due process rights were violated by the admission of false testimony from his codefendant, Anthony Santiago; (2) he was denied the effective assistance of counsel when his trial counsel failed to impeach Santiago with his plea hearing transcripts; and (3) his trial counsel provided ineffective assistance by failing to fulfill a promise he made in his opening statement and by failing to impeach Santiago with prior inconsistent statements. Because Sholar has not established that he is entitled to habeas relief, his petition will be denied.

## BACKGROUND[2]

        In November 2010, the State of Wisconsin filed charges against Sholar and two codefendants -- Mario James, and Anthony Santiago -- in connection with an October 27, 2010 armed robbery and burglary. (ECF No. 20-3 ¶2.) The State later dismissed the charges against

---

[1] Sholar has been transferred to Redgranite Correctional Institution, where Daisy Chase serves as Warden. Accordingly, Chase is substituted as the proper Respondent for Sholar's habeas petition. *See* Rule 2(a) of the Rules Governing §2254 Petitions; Fed. R. Civ. P. 25(d).
[2] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals decision affirming Sholar's convictions. (ECF No. 20-3.)

Sholar and James without prejudice and, for a time, proceeded solely against Santiago. (*Id.* ¶2 n.2.) But the State refiled charges against Sholar and James after Santiago entered a guilty plea and agreed to testify against them. (*Id.*)

The government's case against Sholar and James then proceeded to trial. The State called Santiago, who testified that he, James, and Sholar had committed the robbery. (*Id.* ¶¶6–14.) More specifically, Santiago testified that he and James forced their way into the victim's apartment, tied him up, and made him lie face-down on the floor with his mouth taped shut. (*Id.* ¶¶8–9.) Santiago explained that he then called Sholar and let him in through the kitchen door, after which James and Sholar searched the apartment for valuables while Santiago guarded the victim. (*Id.* ¶9.) He also indicated that the robbers left with guns, gun gases, and gun accessories found in the apartment. (*Id.*)

On cross-examination, attorneys for both James and Sholar tried to impeach Santiago with inconsistencies between his trial testimony and prior statements he made to the police. Counsel questioned Santiago concerning the latex gloves used in the robbery; the color of the getaway vehicle; the color of a gun they were allegedly given by Sholar's brother; and whether the three of them had discussed that the victim might not be alone. (*Id.* ¶13.) Santiago also acknowledged that he had pleaded guilty to multiple charges related to the robbery. (*Id.* ¶14.) He confirmed that, pursuant to his plea agreement, the State had recommended a sentence of twenty years' initial confinement and ten years' extended supervision. (*Id.*) Santiago admitted that he hoped to get a lighter sentence by testifying but said the State had not made any promise that he would necessarily get a reduced sentence. (*Id.*)

The State also presented testimony from the victim, who testified that two men forced their way into his apartment, zip-tied his arms, duct-taped his legs and mouth, and made him lie face down on his stomach staring at the floor. (*Id.* ¶5.) He told the jury that one of the intruders then made a phone call to a third individual, after which the intruders searched the apartment and left with valuables. (*Id.*) The victim did not identify Sholar, but explained he had been positioned face-down on the floor and could not see the robbers as they searched his apartment. (*Id.*)

The jury also heard testimony from several police officers. One of the officers testified to a forensic examination of Sholar's phone that showed numerous deleted calls with Santiago before, during, and after the robbery. (*Id.* ¶¶15–16.) The officer also testified that an analysis of cell-site location information placed Sholar in the vicinity of the robbery when it occurred. (*Id.* ¶17.)

After hearing the evidence, the jury returned guilty verdicts against both Sholar and James on counts of armed robbery and burglary. (*Id.* ¶18.) Sholar was sentenced to a total of twenty years of initial confinement and eight years of extended supervision. (*Id.*)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. See *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state

court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Sholar's habeas claims predominantly relate to Santiago's testimony against him. The Wisconsin Court of Appeals considered and rejected these challenges, finding that Santiago's testimony concerning his plea agreement was truthful and that Sholar had not shown prejudice from any alleged deficiency in his trial counsel's impeachment efforts. The state court also concluded that Sholar was not prejudiced by counsel's alleged failure to uphold a "promise" made to the jury or by counsel's alleged errors cumulatively. Although Sholar disagrees with the state court's rulings, he has not established that the rulings were unreasonable or contrary to federal law. Accordingly, his habeas petition will be denied.

**I. The State Court Reasonably Determined That Santiago's Testimony Was Truthful.**

Sholar first contends that his due process rights were violated when prosecutors failed to correct false testimony he contends that Santiago provided. (ECF No. 1 at 6.) Sholar argues that Santiago falsely told the jury that he had not been promised anything in exchange for his testimony and the State had a duty to correct this misleading testimony. (ECF No. 26 at 8–16.) According to Sholar, Santiago's testimony was false because the government had promised at his plea hearing that its sentencing recommendation would change if Santiago productively cooperated. (*Id.* at 8.) Sholar further contends that at the time of his testimony, Santiago had already productively cooperated by providing statements to police that led to the refiling of charges against Sholar and James. (*Id.* at 8–9.)

The government's knowing use of false testimony to obtain a conviction can violate the Fourteenth Amendment. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (collecting cases). But a conviction will not be overturned unless the prosecutors knew or should have known the testimony they introduced was false and "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001) (citing *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995); *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)).

The Wisconsin Court of Appeals considered and rejected Sholar's false testimony argument. It found that Santiago had testified accurately when he explained the State's sentencing recommendation and acknowledged that there was a possibility the recommendation might

change. (ECF No. 20-3 ¶34.) The state court found that Santiago truthfully conveyed the State's position at Santiago's plea hearing, including its statement that its recommendation would change if his testimony proved "fruitful." (*Id.*) Although Santiago's cooperation had allowed the State to refile charges against Sholar, the court of appeals explained this did not mean that the previous plea agreement had changed or that Santiago believed he was guaranteed a sentence modification. (*Id.*) The state court thus rejected any claim of prosecutorial misconduct. (*Id.* ¶35.)

On habeas, Sholar argues that the Wisconsin Court of Appeals' decision was "contrary to clear established federal law because the prosecutor affirmatively mislead the jury in an attempt to rehabilitate Santiago's credibility." (ECF No. 26 at 8 (internal quotation marks omitted).) But Sholar does not identify any federal caselaw that the state court misapplied, and the record confirms that the state court of appeals applied the correct standard. Accordingly, Sholar's argument is better characterized as a challenge to the state court's factual finding that Santiago's testimony was truthful and not misleading. But even if considered in this fashion, Sholar has not shown he is entitled to habeas relief. In challenging a state court factual finding, Sholar must show that the Wisconsin Court of Appeals' determination that Santiago's testimony was truthful "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §2254(d). He cannot make this showing.

The record supports the state court's factual determination that Santiago accurately testified to the State's sentencing recommendation, including the State's acknowledgment at his plea hearing that its recommendation might change if he cooperated and the cooperation proved fruitful. Sholar has not pointed to any facts in the record establishing that Santiago believed there was a different plea agreement than the one he testified to or that he believed he was guaranteed a sentence modification. Sholar highlights a single statement by Santiago's counsel at the plea hearing that the State's sentencing recommendation "would change." (ECF No. 26-1 at 15.) But he ignores that the State then clarified that the recommendation was "subject to change if something becomes fruitful." (ECF No. 20-3 ¶34.) Accordingly, the cited exchange does not render the court of appeals' factual determination unreasonable. Nor does the fact that Santiago's agreement to testify led to the reissuance of charges against Sholar and James render Santiago's testimony false. The record confirms that the State had agreed that it *might* change its recommendation if Santiago's help proved "fruitful" and the state court reasonably found that the mere recharging of the codefendants did not commit the state to a new recommendation. In sum,

the state court's determination that Santiago's testimony accurately reflected his understanding that the State's recommendation "might change" was not unreasonable.

II. **The State Court Reasonably Rejected Sholar's Ineffective Assistance of Counsel Claims.**

Sholar's remaining grounds for habeas relief are based on the alleged ineffective assistance of his trial counsel. Somewhat confusingly, Sholar frames his arguments as *two* grounds, but offers *three* separate criticisms of counsel's performance. Two of the critiques relate to the impeachment of Santiago. Sholar contends his counsel was ineffective in failing to impeach Santiago with (1) his plea hearing transcript and (2) prior inconsistent statements Santiago made to the police. (ECF No. 26 at 16–21.) Sholar then also objects to counsel's failure to uphold a "promise" Sholar claims he made in his opening statement. (ECF No. 26 at 21–22.) Sholar further argues that these deficiencies cumulatively prejudiced him. (*Id.* at 24–25.)

Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation under *Strickland*, a habeas petitioner must establish (1) deficient performance by counsel and (2) prejudice. *Id.* at 691–94 (ineffective assistance claimant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires Sholar to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *See Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Sholar must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A court need not address both components; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

On habeas review, federal courts apply AEDPA's deferential standard to any prongs of *Strickland* the state court addressed on the merits. *Thomas v. Clements*, 789 F.3d 760, 765–66 (7th

Cir. 2015). Thus, where the state court addressed an ineffective assistance of counsel claim on the merits, this Court's review is "doubly" deferential and the petitioner must overcome *both* *Strickland*'s and AEDPA's highly deferential standards. *Harrington*, 562 U.S. at 105. In this context, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

      A.      **The State Court Reasonably Rejected Sholar's Challenges to Counsel's Impeachment of Santiago.**

Sholar first ineffective assistance claim is simply a repackaging of his due process claim concerning Santiago's testimony about the State's statements at his plea hearing concerning a potentially reduced sentence. The Wisconsin Court of Appeals recognized this and rejected Sholar's claim. (ECF No. 20-3 ¶¶44–45.) As the Court has already explained, the state court reasonably concluded that Santiago's testimony at Sholar's trial was consistent with the statements made at Santiago's plea hearing. It was also reasonable for the court of appeals to conclude that Sholar's counsel did not perform deficiently by not impeaching Santiago with the plea hearing transcript.

Sholar's alternative challenge to counsel's impeachment efforts relates to three statements Santiago made to the police in which he first denied involvement in the robbery and then later admitted his role. (ECF No. 20-3 ¶¶11–12, 14.) Sholar contends his counsel should have either cross-examined Santiago using the police reports and recordings of these statements or subpoenaed the officers to testify at trial. (ECF No. 26 at 18–21.) Sholar also complains that counsel should have impeached Santiago with inconsistencies between these statements concerning: (1) whether Sholar wore latex gloves during the robbery; (2) the actions the three co-conspirators took after the robbery; and (3) when and how Sholar entered the victim's apartment. (*Id.*)

The Wisconsin Court of Appeals rejected Sholar's arguments concerning his counsel's impeachment efforts. (ECF No. 20-3 ¶¶46–49.) As to the first two alleged inconsistencies, the court of appeals held that Sholar had conceded these arguments by failing to respond to the State's contention that the inconsistencies were too insubstantial to prejudice him. (*Id.* ¶47.) The state court then focused its analysis on Sholar's claim that Santiago gave inconsistent accounts of Sholar's entry into the victim's apartment. (*Id.* ¶48.) The state court rejected Sholar claims after finding that Santiago *was* in fact cross-examined on these inconsistencies (by both Sholar's and James's attorneys) and concluding that the jury had been made aware of the inconsistencies. (*Id.* ¶49.)

Sholar has not shown that the state court's analysis of his arguments was unreasonable. Regarding the first two sets of alleged inconsistencies (concerning latex gloves and the actions the co-conspirators took after the robbery), the state court's finding that Sholar conceded those claims precludes this Court from reviewing them on habeas. *See Johnson v. Foster*, 786 F.3d 501, 508–09 (7th Cir. 2015) (holding that federal habeas courts generally may not review a state court's procedural rulings). And, with respect to the third inconsistency, Sholar does not challenge the state court's factual determination that the jury was made aware of inconsistencies between Santiago's trial testimony and his prior statements to police. Instead, Sholar argues that counsel's cross-examination was insufficient and he should have additionally called the officers to whom the statements were given to discredit Santiago's testimony. (ECF No. 30 at 19.) But the scope and content of cross examination are fundamentally strategic decisions for counsel that cannot be second-guessed after-the-fact. *See Moore v. Casperson*, 345 F.3d 474, 489–90 (7th Cir. 2003) (holding that counsel's decision to challenge testimony solely through cross-examination was a strategic decision permitted by *Strickland*). Accordingly, Sholar has not established that it was unreasonable for the Wisconsin Court of Appeals to conclude that he was not prejudiced by any alleged strategic deficiency in his trial counsel's impeachment of Santiago's testimony.

### B. The State Court Reasonably Concluded that Sholar Was Not Prejudiced by Counsel's Failure to Uphold a "Promise" Made in His Opening Statement.

Sholar next contends that his trial counsel was deficient in "failing to uphold a promise made to the jury in opening." (ECF No. 26 at 21–22.) Sholar points to counsel's identification in his opening statement of two individuals, James Luna and Cornelius Rainey, who later possessed guns taken from the robbery but allegedly were never investigated by the police. (ECF No. 20-3 ¶50.) Sholar's attorney later cross-examined one of the police officers about whether he was aware that Rainey and Luna had come to possess weapons stolen from the victim, and the officer responded he was not and had not been involved in that investigation. (*Id.* ¶52.) Sholar argues that counsel broke a promise to the jury because he had access to evidence establishing which officers knew about Luna and Rainey but failed to present it. (ECF No. 26 at 21.) He further contends that counsel had no reasonable basis for failing to present this evidence and counsel's failure to follow up on his opening statement "critically undermined the jury's willingness to believe [Sholar's] defense." (*Id.* at 22.)

The Wisconsin Court of Appeals considered and rejected this claim, concluding that Sholar could not show prejudice from counsel's alleged error. (ECF No. 20-3 ¶¶50–54.) The court noted

that there was no proof that Luna and Rainey were involved in the robbery and that Sholar's counsel had only protested that the State had not adequately investigated how those individuals ended up with guns stolen in the robbery. (*Id.* ¶54.) The state court thus concluded that, even assuming that counsel failed to live up to a promise to the jury, the error was too minor to prejudice Sholar. (*Id.*)

As an initial matter, it is not clear that counsel actually made a promise to the jury. As the state court noted, counsel's statement questioned the State's lack of investigation; it did not promise to present evidence relating to Luna and Rainey. (*See id.* ¶¶50, 54.) But even if the statement was an implied promise, the state court reasonably concluded that Sholar was not prejudiced by counsel's statement and subsequent conduct. Sholar cites three federal cases acknowledging that in certain circumstances counsel's failure to uphold promises made in an opening statement can constitute deficient performance. (ECF No. 26 at 22–24.) But none of those cases supports granting habeas relief here. In *United States ex rel. Hampton v. Leich*, 347 F.3d 219, 256–57 (7th Cir. 2003), the Seventh Circuit granted habeas relief because counsel's broken promises were compounded by a "more important" failure to investigate exculpatory witnesses. In *Myers v. Neal*, 975 F.3d 611, 623–27 (7th Cir. 2020), the Seventh Circuit *reversed* a grant of habeas corpus after concluding that the state court had not unreasonably found that the defendant was not prejudiced by counsel's false promises (and counsel's failures to object to the introduction of several key pieces of evidence). Finally, *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990), is a pre-AEDPA case in which the Seventh Circuit reviewed an ineffective assistance claim *de novo* rather than under the doubly deferential standard AEDPA now mandates. The holdings in these cases do not suggest that the state court's rejection of Sholar's ineffective assistance claim was unreasonable. Sholar has not carried his burden under AEDPA to show that the state court's conclusion on the lack of prejudice was unreasonable.

### C. Sholar Has Not Shown that the State Court's Conclusion that He Could Not Demonstrate Cumulative Prejudice Was Unreasonable.

As *Strickland* requires, the Wisconsin Court of Appeals also considered whether Sholar's multiple allegations of deficient performance had cumulatively prejudiced him. (ECF No. 20-3 ¶55.) The state court noted that Santiago's testimony directly implicating Sholar was consistent with the victim's testimony and that cell-site data placed Sholar near the robbery site and in communication with Santiago at relevant times. (*Id.*) Given the evidence against him, the court

of appeals concluded that Sholar could not demonstrate prejudice, whether his allegations were taken individually or cumulatively. (*Id.*)

Sholar again provides quotes from federal cases establishing generally that a defendant may be prejudiced by the cumulative weight of counsel's errors. (ECF No. 26 at 24–25.) But he provides only a conclusory argument that "[t]he cumulative effect of counsel's errors [was] overwhelming." (*Id.* at 25.) Conclusory statements are insufficient to garner relief under AEDPA and Sholar has provided the Court with no cause to question the state court's conclusion that he was not prejudiced by counsel's alleged errors, whether considered individually or cumulatively. Accordingly, Sholar is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Lamont Sholar's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on May 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge